# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MEGAN VALENZUELA,

        Plaintiff,

v.                                                        No. CIV 17-cv-0957 RB/GJF

BLOOMNET, INC., individually and d/b/a
1-800 FLOWERS, 1-800 FLOWERS.COM, INC.,
individually and d/b/a 1-800-FLOWERS, 1-800 TEAM
SERVICES, INC., individually and d/b/a 1-800 FLOWERS,
1-800 FLOWERS SERVICE SUPPORT CENTER, INC.,
individually and d/b/a 1-800 FLOWERS, 1-800 FLOWERS,
and MARK NANCE, individually and in representative capacity,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

After the Corporate Defendants[1] terminated Megan Valenzuela's employment in July 2016, she filed an Equal Employment Opportunity Commission (EEOC) Intake Questionnaire, and later an EEOC Charge of Discrimination form, alleging discrimination and retaliation. Ms. Valenzuela, who resides in New Mexico, attached additional pages to her EEOC Intake Questionnaire, explaining the allegations in detail and naming seven employees—none of whom are New Mexico residents—who allegedly violated her rights in some way. Absent from any document Ms. Valenzuela submitted is any allegation of wrongdoing against Mark Nance, President of BloomNet, Inc. (BloomNet).

Ms. Valenzuela eventually filed a lawsuit in state court. Curiously, Ms. Valenzuela named the Corporate Defendants, but she did not name any of the other employees she had made

---

[1] Ms. Valenzuela alleges that "Defendants are alter egos of each other and joint employers of Plaintiff." (Doc. 1-B ("Compl.") ¶ 8.) For purposes of this opinion, the Court will refer to all iterations of the corporations named as Defendants in this action as the "Corporate Defendants."

allegations against in the explanatory pages she submitted with the EEOC. Even more surprisingly, Ms. Valenzuela named one new individual defendant—Mr. Nance, who also happens to be a New Mexico resident. BloomNet removed the case to this Court, alleging that Ms. Valenzuela failed to exhaust her administrative remedies against Mr. Nance and fraudulently joined him in order to keep her lawsuit in state court.

Ms. Valenzuela moves to remand, arguing that the New Mexico Supreme Court's decision in *Lobato v. New Mexico Environment Department*, 267 P.3d 65 (N.M. 2011), leaves the door open to her claims against Mr. Nance despite her failure to name him earlier. Defendants disagree and make several strong arguments to demonstrate that this case falls outside of *Lobato*'s "limited circumstances." However, the burden on Defendants to show that there is *no possibility* Ms. Valenzuela could maintain any of her claims against Mr. Nance is simply too high a hurdle. Because reaching a conclusion on the issue of exhaustion would require an intricate analysis of state law, the Court must **GRANT** Ms. Valenzuela's motion and **REMAND** this matter to the Third Judicial District Court, Doña Ana County, State of New Mexico.

## I. Factual and Procedural Background[2]

Ms. Valenzuela began working for the Corporate Defendants in 2006. (Doc. 1-B ("Compl.") ¶ 11.) She suffered from several medical conditions (major depression, anxiety, and insomnia), and in June 2015, she asked the Corporate Defendants to accommodate her conditions by allowing her to take intermittent leave under the Family and Medical Leave Act (FMLA). (Doc. 16-C at 1; *see also* Compl. ¶¶ 13–17.) The Corporate Defendants agreed and also allowed her to report late to work. (Compl. ¶¶ 17–18.)

---

[2] The factual background comes from the Complaint and other pleadings, and the Court construes all facts in a light most favorable to Ms. Valenzuela. *See Sanders v. DJO, LLC*, 728 F. 2d 1200, 1203 (D.N.M. 2010).

Employees of the Corporate Defendants discriminated against Ms. Valenzuela because of her medical conditions, subjected her to a hostile work environment, denied her reasonable accommodations, and eventually terminated her employment in retaliation for her reports to Human Resources regarding the discriminatory treatment. (*See* Doc. 16-C; Compl. ¶¶ 20–30.) Ms. Valenzuela was terminated on July 19, 2016. (Doc. 16-B at 2.) She submitted an Intake Questionnaire to the EEOC on July 27, 2016. (*Id.* at 4.)

It appears that Ms. Valenzuela hand-wrote her answers on the Intake Questionnaire. (*See* Doc. 16-B.) On the first page, Ms. Valenzuela named BloomNet and 1-800-Flowers.com in the space marked "Organization Name," and Jim McCann, CEO, and Maurine Paradine, HR, in the space marked "Human Resources Director or Owner Name." (*Id.*) She also attached six typed pages entitled "EEOC Complaint" to the Intake Questionnaire. (*See* Doc. 16-C.) In these pages, she described in detail specific acts of discrimination and retaliation by seven individual employees of the Corporate Defendants: (1) Jim McCann, CEO of 1-800 Flowers.com, (2) Maureen Paradine, Director of Human Resources for 1-800 Flowers.com, (3) Marc Greszkowiack, VP of Technology for BloomNet, (4) Ted Nelson, Superior of Marc Greszkowiack, BloomNet, (5) Amira Jensen, Senior Manager of Technology for BloomNet, (6) Jerry Leonard, VP of Human Resources for 1-800 Flowers.com, and (7) Cristal Feliciano, Benefits Director for 1-800 Flowers.com. (*Id.*) Defendants contend, and Ms. Valenzuela does not deny, that not one of these employees is a citizen of New Mexico. (*See* Doc. 16 at 7; Doc. 18.)

An EEOC Investigator from the El Paso Area EEOC Office prepared a Charge of Discrimination form, which Ms. Valenzuela reviewed and signed on August 11, 2016. (*See* Doc. 12-1 at 1, 5–7.) The Charge of Discrimination form directs the charging party to name "the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or

Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)" (*Id.* at 5.) Ms. Valenzuela named BloomNet but did not include 1-800-Flowers.com or Mr. Nance in the Particulars section. (*Id.*) On the second page of the form, the Investigator summarized Ms. Valenzuela's claim as follows:

> PERSONAL HARM: I began my employment with Bloomnet Inc. on July 12, 2006 in customer service and sales. On or about June 2015, I began experiencing severe medical issues and decided to request FMLA per my disability. On December 2015, HR advised me that advanced notices were required whenever I was going to be absent from work. Around the same time the VP of Technology Marc Greszkowlack disclosed on an open floor which many non-management employees heard, that I was taking Xanax and was on FMLA because of depression and anxiety. He also stated I didn't take care of my kids and that things were going to get worse for me. I filed a complaint to Maureen Paradine the Director of HR for retaliation regarding my medical condition and breach of medical confidentiality to no avail. On January 31, 2016, I was retaliated and harassed by being called in repeatedly to HR. I was disciplined several times and discharged by Marc Greszkowlack on 07/19/2016. Prior to my discharge I had informed them that I would be opening an FMLA per my disability once again and in the process of submitting further medical documentation, I was discriminated and retaliated against with the discharge on 07/19/16. I have been discriminated against due to my disability and medical leave request.

(*Id.* at 6.)[3]

Ms. Valenzuela submitted an affidavit and stated that she gave the EEOC Investigator "all of the factual basis for [her] discrimination and retaliation claims, as well as all of the entities and individuals that discriminated against [her] and retaliated against [her], including Mark Nance, personally." (*Id.* at 1.) She never filed an amended form. Ms. Valenzuela also stated that she "was not represented by any attorney when [she] signed this Charge of Discrimination." (*Id.*) Ms. Valenzuela "did not hire" her current attorneys, Mr. Brett Duke and Ms. Daniela Labinoti, "until after [she] signed the Charge of Discrimination." (*Id.*)

---

[3] All spelling and grammatical errors are original to the form.

4

Mr. Nance submitted an affidavit and stated that he "did not participate in any disciplinary or accommodations issues related to [Ms. Valenzuela], and did not make the decision to terminate [her]." (Doc. 9-2 ¶ 8.)

The New Mexico Department of Workforce Solutions, Human Rights Bureau issued an Order of Nondetermination. (*See* Compl. ¶ 9.) Ms. Valenzuela, making only state-law claims, filed suit in the Third Judicial District Court on August 4, 2017. (*Id.* at 1.) Neither the amount in controversy nor the citizenship of the parties is in dispute. (*See* Doc. 1.) Ms. Valenzuela is a citizen of New Mexico. (Compl. ¶ 1.) BloomNet, 1-800 Flowers.com, Inc., and 1-800 Team Services, Inc. are all Delaware corporations with their principal places of business in New York. (Doc. 1 ¶¶ 4–6.) 1-800 Flowers Service Support Center, Inc. is a New York corporation with its principal place of business in New York. (*Id.* ¶ 7.) Mr. Nance is a citizen of New Mexico. (Compl. ¶ 7.) Ms. Valenzuela specifically pleaded that "[t]he United States District Courts do not have subject matter jurisdiction because there is no federal question jurisdiction and there is no diversity jurisdiction." (*Id.* ¶ 10.)

BloomNet removed the lawsuit to this Court on September 18, 2017, asserting diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a)–(b). (*See* Doc. 1 at 1.) In its Notice of Removal, BloomNet asserted that Ms. Valenzuela fraudulently joined Mr. Nance and that the Court should not consider his citizenship in evaluating diversity. (*Id.* at 2–4.) On September 29, 2017, Defendants 1-800 Flowers.com, Inc.,[4] 1-800 Team Services, Inc., 1-800 Flowers Service Support Center, Inc., 1-800 Flowers, and Mr. Nance moved to dismiss Ms. Valenzuela's claims against them. (Doc. 8.) The Defendants claim that, regarding her claims for handicap discrimination, failure to accommodate, and statutory retaliation, Ms. Valenzuela failed to

---

[4] Defendants contend that "1-800 Flowers.com, Inc. has been improperly named in this lawsuit as defendant 1-800 Flowers, which is not a legal entity." (Doc. 1 ¶ 8.) The Court declines to take up this issue in this Opinion.

exhaust her administrative remedies against them. (*Id.* at 2.) They further assert that, regarding her claims for common law retaliation and hostile work environment, she has failed to state claims on which relief may be granted. (*Id.*) Ms. Valenzuela then filed this Motion to Remand. (Doc. 12.)

**III.    Legal Standards**

A defendant may remove a civil action filed in state court where the action "satisfies the requirements for original federal jurisdiction . . . ." *Archuleta v. Taos Living Ctr., LLC*, 791 F. Supp. 2d 1066, 1070 (D.N.M. 2011) (discussing 28 U.S.C. § 1441(a)). Diversity jurisdiction exists where all parties are "citizens of different States" and "the matter in controversy exceeds" $75,000. 28 U.S.C. § 1332(a). Where a plaintiff fraudulently joins a non-diverse defendant to destroy complete diversity, a defendant may still properly remove the case to federal court. *See Archuleta*, 791 F. Supp. 2d at 1071.

Because "a fraudulent joinder analysis [is] a jurisdictional inquiry," *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1247 (10th Cir. 2004), "the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available,'" *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted). The defendant "must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quotation omitted). The Court must "resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party." *Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000) (internal and subsequent citations omitted)).

Here, Defendants do not allege actual fraud, but rather argue that Ms. Valenzuela is unable to maintain her claims against Mr. Nance because she failed to exhaust her administrative remedies against him.[5] (*See* Doc. 16.) Thus, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Nerad v. AstraZeneca Pharm., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (citation omitted). The burden of proof rests heavily on the party asserting fraudulent joinder to show that joinder is improper. *Montano*, 2000 WL 525592, at *1. Defendants "must demonstrate that there is no possibility that [Ms. Valenzuela] would be able to establish a cause of action against [Mr. Nance] in state court." *Id.* (quoting *Hart*, 199 F.3d at 246 (internal and subsequent citations omitted)). Where a plaintiff's claim may only be dismissed "after an intricate analysis of state law[,]" the claim "is not . . . wholly insubstantial and frivolous . . . ." *Id.* (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)). In that instance, the Court must find that there is a reasonable basis for plaintiff to recover against the non-diverse defendant and remand the action to state court. *See id.*

### IV. Discussion

At issue in this action is whether Ms. Valenzuela has a reasonable basis for recovering in state court against Mr. Nance, the non-diverse defendant. Defendants contend that her claims fail because she did not exhaust her administrative remedies against Mr. Nance, and because she did not make any specific factual allegations against Mr. Nance. (*See* Doc. 16.)

---

[5] Defendants also argue that Ms. Valenzuela has failed to exhaust against all Corporate Defendants other than BloomNet, because she only named BloomNet on the Charge of Discrimination Form. (*See* Doc. 8.) The Court finds that the Motion to Remand can be decided on the basis of her claims against the non-diverse Defendant, Mr. Nance, and focuses solely on those claims.

### A. A decision on whether Mr. Nance was fraudulently joined requires too intricate an analysis of state law.

Because Ms. Valenzuela listed only BloomNet in the section of the Charge of Discrimination form that directs the charging party to name "the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others," Defendants argue that she has failed to exhaust her claims against Mr. Nance. (*See* Doc. 16.) "Although the NMHRA provides for" both corporate liability as well as "individual, personal liability in discrimination cases, it also demands that 'a plaintiff must exhaust his or her administrative remedies ***against a party*** before bringing an action in district court ***against that party***.'" *Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F. Supp. 3d 1107, 1114 (D.N.M. 2015) (quoting *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001) (internal and subsequent citations omitted)). "To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the [New Mexico Human Rights Division (NMHRD)] or the EEOC making sufficient allegations to support the complaint; and (ii) receive an order of nondetermination from the NMHRD." *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1267 (D.N.M. 2011) (citing *Mitchell-Carr v. McLendon*, 980 P.2d 65, 71 (N.M. 1999)). In order for a plaintiff to exhaust her administrative remedies against individual defendants, it is critical that she provide the individuals' names and addresses on the Charge of Discrimination form. *See Lobato*, 267 P.3d at 68.

Prior to *Lobato*, New Mexico state courts consistently held that a plaintiff's failure to name individual defendants on the Charge of Discrimination form barred suit against those defendants in district court. *See id.* (citing N.M. Stat. Ann. § 28-1-13; *Sonntag*, 22 P.3d at 1193 ("holding that a failure to name the owner of a corporation in his personal capacity barred suit

against him in district court"); *Mitchell-Carr*, 980 P.2d at 69, 76 ("holding summary judgment was proper because the individual defendant was not named in the original NMHRA complaint"); *Sabella v. Manor Care, Inc.*, 915 P.2d 901, 903, 906 (N.M. 1996) ("requiring exhaustion of administrative procedures as a prerequisite to suit in district court"); *Luboyeski v. Hill*, 872 P.2d 353, 355–56 (N.M. 1994) ("holding that individual defendants could not be named for the first time in district court")). But in *Lobato*, the New Mexico Supreme Court examined the same Charge of Discrimination form Ms. Valenzuela used and found that because it asks for the name and address of the employing agency but does not ask for information about any individuals whom the filer may have claims against, the form does not "provide a fair and adequate opportunity to exhaust administrative remedies against individual actors under the NMHRA . . . ."[6] *Id.* at 67–68. Noting that information about the names and addresses of such individuals "is critical to preserving judicial remedies . . . under the NMHRA[,]" the court found the form "creates a trap for unwary claimants to forfeit their statutory rights and judicial remedies." *Id.* at 68.

The *Lobato* Court noted that the plaintiff had described the individual defendants' allegedly discriminatory behavior in the Charge of Discrimination form. *Id.* at 69. Because his lawsuit stemmed from "the very incidents reported in the" misleading form, the court found that the individual defendants likely had constructive notice of his claims. *Id.* Based on the limited circumstances of the case, the court held that the plaintiff had sufficiently exhausted his administrative remedies as to those individuals. *See id.* at 68–69; *Lobato v. N.M. Env't Dep't*, No. 09-CV-1203 BB/RLP, 2011 WL 13137326, at *1 (D.N.M. June 14, 2011).

---

[6] It appears that the NMHRD has published an updated form as of July 2017. *See* https://www.dws.state.nm.us/Portals/0/DM/LaborRelations/Human_Rights_Complaint_Form_0717.pdf, available at https://www.dws.state.nm.us/Labor-Relations/Human-Rights/Complaint-Investigation-Process (last visited Apr. 16, 2018).

9

After *Lobato*, courts have taken care to define an "unwary claimant" as one who filed a Charge of Discrimination form "without the advice of counsel." *See*, *e.g.*, *Benavidez v. Sandia Nat'l Labs.*, 212 F. Supp. 3d 1039, 1084, 1086 (D.N.M. 2016) (discussing that there was "no indication that, by the time Benavidez signed and submitted the Charge of Discrimination form, she had not already consulted with an attorney[,]" and noting that plaintiff conceded she had not exhausted her remedies as to the individual defendants) (quotation omitted); *Muffoletto*, 157 F. Supp. 3d at 1114 (noting that the claimant "had already consulted with an attorney" before she filed the Charge of Discrimination form and finding that she did "not fit the New Mexico Supreme Court's description of 'unwary' plaintiffs") (citations omitted). The Court finds Ms. Valenzuela fits that description, as it is undisputed that she filed her own Charge of Discrimination form without the help of an attorney. (*See* Doc. 12-1 at 1.)

Defendants attempt to distinguish *Lobato* on three grounds. The fact that the parties have spent considerable time and energy briefing these issues without citing any authority that is entirely on point is a clear indication that these issues will require a more nuanced analysis of state law than is appropriate in a motion to remand. Regardless, the Court will briefly examine each argument.

First, Defendants argue that because Ms. Valenzuela had the benefit of counsel *after* she filed her form, she was not truly an unwary claimant. (*See* Doc. 16 at 5–6.) Defendants believe that the ultimate query is whether Ms. Valenzuela *ever* had a fair and adequate opportunity to exhaust. (*See id.*) In other words, Defendants argue that Ms. Valenzuela failed to exhaust because she did not file an *amended* Charge of Discrimination form after she retained her attorneys. (*See id.*) While the *Lobato* Court did confine its holding to the "limited circumstances"

of that case, *see* 267 P.3d at 69, Defendants can find no authority on point to specifically support their position.

Second, Defendants argue that because Mr. Nance had no constructive notice of Ms. Valenzuela's claims, her failure to exhaust is not waivable under *Lobato*. (Doc. 16 at 3, 7, 9.) The Court finds *Ranspot v. Taos Living Center*, Civ. No. 11-0778 BB/LFG, Mem Op. (D.N.M. Aug. 21, 2012), an unpublished decision from this District, instructive. In *Ranspot*, the plaintiff filed suit in district court for discrimination, naming both her former employer and two individual employees as defendants, one of whom was non-diverse. *Ranspot*, Civ. No. 11-0778, at *1–2. The plaintiff had named only the employer in her Charge of Discrimination form, and the non-diverse defendant argued that the plaintiff had failed to exhaust her administrative remedies against him. *Id.* at *6–7. The plaintiff moved to remand and relied on *Lobato* to argue that "the administrative-exhaustion requirement was waived . . . ." *Id.* at *7. The defendant attempted to distinguish *Lobato* on the basis of notice. *Id.* As described above, the *Lobato* Court determined that the individual defendants likely had constructive notice of the plaintiff's claims. *See* 267 P.3d at 69. There was no evidence in *Ranspot*, however, that the plaintiff had described the individual defendants' discriminatory conduct in the Charge of Discrimination form. *Ranspot*, Civ. No. 11-0778, Mem. Op. at *7. Thus, the defendant argued, because there was no constructive notice, the case was distinguishable from *Lobato* and the plaintiff had not exhausted her administrative remedies. *Id.* The *Ranspot* Court found that to resolve this dispute, it would "have to engage in an 'intricate analysis of state law' to determine whether such notice is even necessary to allow a waiver of the administrative-exhaustion requirement." *Id.* Accordingly, the court granted the motion to remand. *Id.*

In this case, Defendants rely heavily on the fact that while Ms. Valenzuela named seven individual employees in her Intake Questionnaire, she did not name Mr. Nance. (Doc. 16 at 3, 9.) Thus, Defendants argue, Mr. Nance did not have any constructive notice, which means that Ms. Valenzuela's failure to exhaust is not waivable under *Lobato*. (*See id.*) To "resolve this administrative-exhaustion dispute, the Court would be forced to resolve a factual dispute concerning the extent of [Mr. Nance's] notice, constructive or otherwise, that" Ms. Valenzuela had asserted claims against him. *See Ranspot*, Civ. No. 11-0778, Mem. Op. at *7. Moreover, "the Court would once again have to engage in an 'intricate analysis of state law' to determine whether such notice is even necessary to allow a waiver of the administrative-exhaustion requirement." *See id.* Because "*Lobato* did not explicitly hold that actual or constructive notice is an absolute prerequisite to a court's decision to waive the exhaustion requirement[,]" there is no simple answer to this question. *See id.*

Third, Defendants contend that because Ms. Valenzuela failed to make specific allegations against Mr. Nance in her Complaint, she cannot state a claim for relief against him. (Doc. 16 at 11–12.) Ms. Valenzuela argues that her "collective pleadings" made against *all* Defendants are sufficient under state pleading standards. (*See* Doc. 12 at 15–16.) Neither party cites to authority on point, and the Court finds that a decision on this issue would require a searching analysis of state law that is inappropriate in considering the motion to remand.

Defendants have failed to meet their heavy burden to show that there is no possibility that Ms. Valenzuela can maintain her claims against Mr. Nance. Accordingly, the Court will remand this action to state court.

### B. The Court will not award attorneys' fees to Ms. Valenzuela.

Ms. Valenzuela seeks attorneys' fees in her motion to remand. (*See* Doc. 12 at 17–18.) 28 U.S.C. § 1447(c) provides that a court has discretion to award attorneys' fees, but "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Cop.*, 546 U.S. 132, 141 (2005); *see also Kansas ex rel. Morrison v. Price*, 242 F. App'x 590, 593 (10th Cir. 2007). Defendants raised several valid issues to demonstrate that the circumstances of this case are distinguishable from *Lobato*. The Court finds that BloomNet had an objectively reasonable basis in removing this case. The Court will deny Ms. Valenzuela's request for attorneys' fees.

### V. Conclusion

The Court finds there is a reasonable basis to believe that Ms. Valenzuela will succeed in at least one of her claims against Mr. Nance and will **GRANT IN PART** Plaintiff's Opposed Motion to Remand and for Attorney Fees (Doc. 12) and **REMAND** this matter to the Third Judicial District Court, Doña Ana County, State of New Mexico. However, the Court will **DENY** Ms. Valenzuela's Motion for Attorney Fees (*see* Doc. 12).

The Court will **DENY AS MOOT** the remaining pending motions in this case. (Docs. 8; 20.)

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**